UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LUCAS EWALD AHRENDT,<br><br>Defendant. | 4:23-CR-40092-KES<br><br>GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION TO RECONSIDER |

Pending before the court is the Government's motion to reconsider the court's order granting in part and denying in part Ahrendt's motion to suppress. Docket 49; Docket 44. The Government does not object to the court's overall conclusions regarding whether the evidence should be suppressed. *See* Docket 49. Instead, the Government requests only that the court to omit two words in the court's initial order. *Id.* Defendant, Lucas Ahrendt, objects to the Government's motion. Docket 57. For the following reasons, after carefully considering the parties' submissions and the court's previous suppression order, the court grants in part and denies in part the Government's motion.

I.   **Procedural Background**

On August 1, 2023, the Government filed an indictment charging Ahrendt with two counts of illegally possessing a firearm. Docket 1.[1] Among

---

[1] Ahrendt has since pleaded guilty to Count 2 of the Indictment (Receipt of a Firearm By a Person Under a Felony Indictment in violation of 18 U.S.C. § 922(n)). *See* Docket 51.

1

other things, Ahrendt moved to suppress evidence of the firearms found in his possession, arguing the officers found them by violating his Fourth Amendment Rights. *See* Docket 21; Docket 21-1. With respect to the Fourth Amendment issue, Magistrate Judge Duffy issued a Report and Recommendation recommending the court deny Ahrendt's motion. Docket 29 at 36. The court agreed with the Report's ultimate conclusion on this issue and adopted (with modification) the Report's recommendation. Docket 44 at 9-31.

At issue in the Government's motion is the court's discussion about whether law enforcement officers had effectuated a *de facto* arrest during their interactions with Ahrendt. Docket 49. Specifically, the court found Officer VanDiepen's testimony that Ahrendt was "free to stand outside with [an] officer in the cold if he so chose[,]" was "uncredible and unrealistic." *See* Docket 44 at 29. The Government objects only to the words "uncredible and." Docket 49 at 1.

**II.   Discussion**

In the context of suppression motions, a party may either (1) move to reopen a suppression hearing; or (2) move the court to reconsider its order on suppression. *See United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008); *United States v. Thompson*, 580 F. Supp. 3d 503, 506 (N.D. Ohio 2022) (evaluating both a motion to reopen and motion to reconsider). Here, the Government asks the court to reconsider the order denying Ahrendt's motion to suppress and does not seek to reopen the suppression hearing. *See generally* Docket 49. So the court must determine the appropriate standard to apply.

Unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not expressly provide for motions to reconsider. *Compare* Fed. R. Civ. P. 59(e) or 60(b), *with generally* Fed. R. Crim. P.; *see also United States v. Loera*, 182 F.Supp.3d 1173, 1201 (D.N.M. 2016); *United States v. Foster*, 763 F.Supp.2d 1086, 1087 (D. Minn. 2011). In *United States v. Luger*, although not expressly adopting the approach, the Eighth Circuit recognized that other circuits have applied the civil rules of reconsideration standards in the criminal context "outside of the suppression context." *See* 837 F.3d 870, 875-76. The court recognizes that the Government's motion here does indeed arise in the suppression context, but nevertheless believes *Luger* referred to matters "outside of the suppression context" because it recognized that motions to reconsider and motions to reopen suppression hearings are often interrelated. *See, e.g., United States v. Laws*, 819 F.3d 388, 396 (8th Cir. 2016) (using terms motion to reconsider and motion to reopen interchangeably); *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (same); *United States v. Tisdol*, 450 F.Supp.2d 191, 194 (D. Conn. 2006) (same); *United States v. Maloid*, 2016 WL 1175147, at *1-2 (M.D. La. Mar. 24, 2016) (evaluating government's motion to reopen and resultant motion to reconsider court's previous order granting defendant's suppression motion). Here, because the Government does not move to reopen the suppression hearing and instead asks the court to reconsider a single sentence of its order, the court finds it appropriate to apply the reconsideration standards from the civil context when addressing the Government's motion. *See, e.g., United States v. Vear*, 2016 WL 4994963, at *1

3

(D. Nev. 2016) (applying civil standards in reconsideration motion of suppression order); *see also United States v. Christy*, 739 F.3d 534, 539-40 (10th Cir. 2014) (same).

In the civil context, motions for reconsider "serve[] the limited function of correcting manifest errors of law or fact or . . . present[ing] newly discovered evidence." *Luger*, 837 F.3d at 875 (quoting *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 407 (8th Cir. 2013) (first alteration added and second alteration in original)). Here, the government does not identify any "manifest error of law or fact," nor has it "present[ed] newly discovered evidence." *See id.* To the contrary, the Government admits it "appreciate[s] the point the Court [was] making—that the 'choice' presented to Ahrendt in this situation was not really a choice at all, given the harsh weather conditions." Docket 49 at 2. In fact, the Government does not object to the order stating that Officer VanDiepen's suggestion was "unrealistic." *Id.* at 1. Instead, the Government only argues reconsideration is appropriate because the court did not need to reach the specific issue of Officer VanDiepen's credibility, neither party raised any argument related to VanDiepen's credibility, and the Report and Recommendation did not reach this issue. *See id.* at 1-3.

None of these arguments are persuasive. The court discussed Officer VanDiepen's credibility (specifically as it related to whether he gave Ahrendt a choice to stay outside or forced him to go in the back of a police car) to determine whether law enforcement officers had engaged in a *de facto* arrest of Ahrendt. *See* Docket 44 at 29-30. In making this determination, one factor to

4

consider is whether officers could have used less intrusive or threatening means. *See United States v. Childers*, 73 F.4th 960, 963 (8th Cir. 2023). Part of this analysis includes factors such as whether law enforcement placed suspects in the back of squad cars. *See id.* at 964-65. And one of the related factors the court must consider is the extent to which law enforcement unreasonably dictated defendant's every move. *See United States v. Sanford*, 813 F.3d at 712-13 (8th Cir. 2016) (explaining that "a de facto arrest occurs when the officer's conduct is *more intrusive than necessary* for a *Terry* investigative stop").

Determining whether Officer VanDiepen forced Ahrendt into the back of the police car or whether Officer VanDiepen gave him a choice to stay outside directly relates to whether Officer VanDiepen acted more intrusively than necessary. To complete a thorough discussion of this factor, the court appropriately evaluated the totality of circumstances surrounding Officer VanDiepen's decision to take Ahrendt to the back of the patrol car. *See* Docket 44 at 29-30; *see also Sanford*, 813 F.3d at 712 ("There is no clear line between investigative stops and de facto arrests"); *United States v. Maltaois*, 403 F.3d 550, 555-56 (8th Cir. 2005) (explaining that the court must consider the "facts and circumstances" the officers faced when determining whether officers used the least intrusive means). Even though the parties did not explicitly discuss Officer VanDiepen's credibility, a witness's credibility is always at issue when considering the totality of circumstances. *See United States v. Rohrbach*, 813 F.2d 142, 145 (8th Cir. 1987) ("Having reviewed the transcript of the

5

suppression hearing, we see no reason to overturn this determination by the able District Judge, who heard the witnesses and who *necessarily evaluated their relative credibility and persuasiveness*." (emphasis added)). Furthermore, the Government's observation that the Report and Recommendation made no credibility determinations of Officer VanDiepen is irrelevant because the scope of the Report and Recommendation's factual findings does not bind the court. *See United States v. Hayden*, 759 F.3d 842, 846 (8th Cir. 2014) ("[T]he district court has discretion to receive new evidence without any special justification while conducting de novo review of a magistrate judge's report and recommendation."). The court appropriately considered Officer VanDiepen's testimony and weighed it, along with all of the other relevant factors and circumstances, in making its determination regarding whether officers engaged in a *de facto* arrest of Ahrendt. In short, the court rejects the Government's argument that the court needlessly discussed the issue, that the court should not have discussed it given neither party raised it, and that the court should not have reached it given the Report did not discuss it.

At bottom, the Government's primary concern is to protect Officer VanDiepen's reputation and future career. *See* Docket 49 at 3. The Government explicitly states its desire to protect Officer VanDiepen's "reputation for honesty and truthfulness" and that the court's initial order finding that he was not credible "can potentially carry significant consequences that will follow that officer throughout his career." *Id.* But the court's job is not to protect anyone's, much less a law enforcement officer's, reputation. Granting a motion to

6

reconsider solely for the purpose of insulating an officer from possible ramifications on his career would be inappropriate and would extend well beyond the purposes for which motions to reconsider exist. *See Luger,* 837 F.3d at 875.

At the same time, the court recognizes that its previous order did not explicitly state why precisely it found Officer Van Diepen's suggestion to be "uncredible." Docket 44 at 29. A witness can be uncredible for a number of reasons, such as (but not limited to) intentionally lying, purposefully exaggerating, merely forgetting, or making an honest (but miscalculated) judgment, having poor perception of an event (e.g. the witness had a poor view of the events about which they testified). These are all reason for a witness to be uncredible, but not all of them involve a witness necessarily lying or purposefully obfuscating the truth. Thus, the court finds it appropriate to clarify that in stating Officer Van Diepen's testimony that Ahrendt "was free to stand outside with [an] officer in the cold if he so chose" was uncredible, *see* Docket 44 at 29, the court does not find that Officer Van Diepen intentionally lied to the court or purposefully exaggerated. Rather, the court finds Officer Van Diepen's testimony to be uncredible because the court disagrees with his judgment of the situation given the extreme weather. In short, nothing about the court's original order or this current order should be construed to suggest that the court found Officer Van Diepen intentionally lied or exaggerated to the court. Nevertheless, the evidence still supports a finding that Officer Van Diepen's testimony that Ahrendt was free to stand outside despite the extreme

7

weather to be uncredible, because Officer Van Diepen made a miscalculated judgment.

## III. Conclusion

For these reasons, the Government's motion to reconsider (Docket 49) is GRANTED IN PART AND DENIED IN PART. The court's discussion clarifying the reasons for why it found Officer Van Diepen's testimony to be uncredible shall be incorporated into the court's previous order.

Dated April 22, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE